The State Appellate Court upheld Mr. Stone's conviction for attempted murder on a charge that was never pleaded with no specific victim or description of a subset of potential victims. He was convicted by a jury that was never correctly instructed, and the verdict returned was not, does not reflect the theory on which the State Appellate Court upheld the attempted murder conviction. Basically, the State Appellate Court directed a verdict of conviction by upholding Mr. Stone's conviction on a basis that was identified for the first time on appeal in direct violation of clearly established U.S. Supreme Court law reflected in its holding in Dunn. Clearly established U.S. Supreme Court law finds such a variance between the trial and a new basis affirmed for the first time on appeal to be substantially injurious within the meaning of Brecht, which subsumes AEDPA's D-1 and D-2 showings after its decision in Ayala. Can you help me? You did not discuss the 2014 Supreme Court decision in Lopez v. Smith, and could you tell me why that case does not control here? I will. In Lopez, Mr. Smith did not base his claim on clearly, specifically clearly established U.S. Supreme Court law. Instead, he based his variance claim on this Court's decision in Shepard v. Rees, which relied on Federal law for very general principles, but which did not qualify for the specific rule that affords the State court a very narrow range of discretion. Smith's variance claim was based on the prosecutor's shift in theory of murder from direct perpetrator to aider and abetter. Now, this theory of murder under California law doesn't have to be pleaded so long as it's supported by evidence seduced at the preliminary examination, and it was. The prosecutor in Smith requested an instruction on aiding and abetting at the close of the evidence, and the trial court gave it, which also afforded notice to the defense. The jury then convicted Smith without specifying the theory on which it based the conviction in its verdict form. Now, in Stone, in contrast, the variance claim was based not on a mere change in theory, but a change that altered two inextricably intertwined elements of the offense that had been pleaded in the information. So how would the defense have changed had the charge been different in the instruction that you wish had been provided? The defense would have been quite different in that the importance of proving the locus of every person in the subset group, whatever that was, where they were located, what the trajectory of the bullet would have been. Because... But that issue was litigated at trial, was it not? That's the whole purpose of having the officer testify, that the arm was perpendicular and that the victims were four or five feet away? Well, but if you have a handgun, I don't want to point at anyone here, but if you have a handgun and you're pointing at something or someone four feet away, which was Pescatore's testimony, and you're observing this from a distance of 60 feet, it's very difficult to envision a group of eight to ten people unless they were lined up single file as being in the direct line of fire. But the testimony was that the group was actually standing on a grassy knoll, so that if the defendant was pointing the weapon perpendicular from a seated position in the car four or five feet away, wouldn't that be directly in the line of the people that were standing there? At four feet, it would probably have been directly in the line of one person. Well, the testimony, was there a group of ten? Yeah, there was a group of ten. And there was also testimony that some were seated, some were standing. And when J.F. was the intended victim, the alleged intended victim, the locus of all those people was irrelevant. But I'm still not hearing how the defense would have been tried differently, because that was the focus of the defense at trial. Well, but not under any correctly worded jury instruction. Well, I'm looking for prejudice here. I mean, let's assume that there was error with regard to the instruction. How was the defendant prejudiced if the whole focus was on the angle of the line of fire, the proximity of a large group of people into which the shot was fired? How is the defense case going to be different the next time around? It's going to be different because the trajectory of the bullet, and if you locate everyone in the group and the allegation is now that you intended to kill everyone in the group or someone in the group, let's assume the allegation is to prove someone in the group, if you're at a distance of four feet and you have a handgun and there's eight to ten people, unless they're all lined up single file, you're not aiming, you're not shooting in the direction of the group. You're shooting in the direction of one person. Four feet is a very short distance. I thought the defense was that, no, no, no, the gun wasn't pointed perpendicular. It was actually at an angle, and he was just shooting over their head. And J.F. testified, he was shooting over my head. If he'd intended to get me, he would have because it was a short distance. The jury heard all that. The jury heard all that. And decided that the shot was, I guess by the verdict, I have to assume, the jury found that the shot was fired at somebody within the group. No, on this verdict. And it was fired with intent to kill. Isn't that what the jury's verdict was? On this verdict, the jury's verdict was he intended to kill J.F. And that's the problem here. You've got an allegation. But the testimony was J.F. was in the group, right? The testimony was that J.F. was in the group. The testimony was also that the gun was pointed over J.F.'s head. Well, but the jury, by its verdict, apparently didn't believe that. They believed the officer's testimony. Well, but by its verdict, it found intent to kill Joel F. Who was in the group. Who was one member of the group. What I don't understand about your argument is I don't see this any different from throwing a hand grenade into a group of people or planting a bomb. Or using a bazooka, maybe. Yeah. I mean, you know, the problem you've got is essentially, I guess, what we in the criminal law call transferred intent. It really doesn't matter in order to sustain the charge whether it was J.F. that was the intended victim or somebody else in the group. But it does matter because under California state law, transferred intent does not apply to attempted murder. That's the holding of the Bland case. Okay. And that's why it really, really matters. And I think if we look at the Dunn case, which is remarkably similar, you will see the prejudice. Now, in Dunn, the defendant. Tell me about prejudice again. What is the prejudice? The prejudice is that he was convicted of an offense for which he was never charged, on which the jury was not instructed correctly, and the verdict form says he specifically intended to kill Joel F. And you have to understand that until the Stone II decision came down, Bland required the specific intent to be alleged relative to an identified victim. And the jury has to consider the intent relative to each individual victim. And so, as a result, they are inextricably linked until the California Supreme Court's decision in Stone II. And that leads me then, segues into the prejudice showing. Because in Dunn, the defendant was prosecuted for perjury, giving a false declaration under oath in a proceeding that was ancillary to a court or grand jury proceeding. And Mr. Dunn made two statements, one of which was given in October in an ancillary proceeding, and one of which was given in September in a proceeding that was not ancillary. The indictment specified the September statement as the basis for the perjury conviction, and so did the jury instructions. The appellate court affirmed on the basis of the October statement, despite the fact that the pleading and the jury instructions referenced the September statement. It did so because the appellate court viewed it as non-prejudicial variance between pleading and proof at trial. But the U.S. Supreme Court reversed and held that to uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury offends the most basic notions of due process. The U.S. Supreme Court held that appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would be likely to obtain on retrial. I thought that case turned on the fact that one statement was taken in a lawyer's recorder and the question was whether or not that was ancillary to a judicial case. That's correct. And that statement was found to be not ancillary. And so even though the indictment alleged that that was the act of perjury on which it was based and the jury found that, the court of appeal upheld it using the October statement. I guess I'm having a hard time seeing how that's directly analogous to this situation where the act is a single act that occurs and the victims are all together when the shot is fired. While there was no variance between the indictment and proof at trial, the U.S. Supreme Court held that there was a discrepancy between the basis on which the jury rendered its verdict and on which the court of appeals sustained Petitioner's conviction. So the prejudice here is that when the evidence at the preliminary examination supplied a basis for what we subsequently learned to be the Stone II theory, the prosecutor made an election. Instead of alleging a Stone II theory by describing the subset as the California human being, it went back to J.F. as the victim. The jury was instructed that J.F. was the victim. And if this were a claim of instructional error, you might have a prejudice issue here, but this is not an instructional error claim. This is the prejudice showing to the variance. So Mr. Stone was convicted on a charge that was never made, on which the jury was never correctly instructed, and that is important because the instruction that my friend has relied on is an instruction which that instruction doesn't accurately state the law of kill zones. So the only instruction the jury would have received on the Stone II theory was embedded in that kill zone instruction, which the court said, the California Supreme Court said was incorrect and didn't apply anyway. So if you're going to look to the jury found on other correctly instructed instructions, you have to recognize that these instructions were not correct. The evidence was insufficient to kill Joel F. So if we were to write an opinion ruling in your favor, what is the clearly established Supreme Court case we'd cite? U.S. versus Dunn. That's it. Okay. Thank you. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. Dunn does not hold that the pleading document itself is the sole source of notice. The quote from Dunn really is that to uphold a conviction on a charge that was neither alleged in indictment nor presented to a jury at trial offends the most basic notions of due process. Later in the same, this is on page 106 of Dunn, and 107 in the same paragraph, the court even notes that it might have been okay if the jury rendered their verdict had the prosecution built its case on the particular theory that the appellate court used, but that's not what happened. Here the prosecution did build its case on the theory that the appellate court affirmed on. That was on a theory that he shot to kill and he didn't have any particular victim in mind, but he intended to kill someone. I mean, this was something, the theory was constructed by the appellate court, right, by the California Supreme Court, suggested first by the California Supreme Court and then implemented by the court of appeal. When you say the theory, do you mean the prosecutor, in fact, tried to make his case based on a particular victim? Because if so, the answer is no. The prosecutor's argument at trial is very clear that he couldn't prove a particular victim. So it cannot be that somehow only on appeal did the idea arise that perhaps this could be done without a victim. The prosecutor was very clear, I can't prove that it was Joel, Joel Flores, the intended victim. So no, it didn't arise for the first time on appeal. It came up at trial, and so defense counsel, who I assume was as... But was the jury charged on that? The jury was charged, the language that counsel referred to, the jury was charged he could convict either based on intent to kill Joel F. I'm sorry, I'm looking at Excerpt of Record, page 250. Okay, hold on a second. And the jury is instructed two ways to convict. One, you could find... 250? Sorry. Okay. I'm there. On one, you could find intent to kill Joel F. I'm sorry, which line? The first paragraph, so line one. In order to convict the defendant of attempted murder of... That's J.F., right? Sorry? J.F. under the blank, okay? The people must prove either the defendant intended to kill Joel F. or that he not only intended to kill another human being, but he also intended to kill anyone within the kill zone and that Joel F. was in the zone of harm in the kill zone. Now, the latter... This is a kill zone instruction, but the facts that the jury have to find in order to convict do suffice to show attempted murder of another person, because the latter part, that Joel F. was in the zone, is actually irrelevant. If he intended to convict to kill another human being, that's really irrelevant. That's really the end of the mouse question. Well, but you can't... Sorry. Excuse me. Go ahead. They had to have found intent to kill either Joel F. or another human being in order to convict here. Okay. You can't, though, cure a defective charge by having the instruction be broader than the charge. I mean, that's what happened here, isn't it? When you say that it's a defective charge, Your Honor, I have to point out that this is not a federal prosecution. We are not bound by the rules of indictment under the Sixth Amendment that apply in federal courts. And unless there is a Supreme Court case that says the written document must supply everything needed, then there is no place to start in this AEDPA-governed case. In fact, the offense under the law isn't murder of a particular person or a attempted murder of a particular person. It is attempted murder, period. And he was charged with the offense of attempted murder in the written document. He knew the dates. He knew the location. All that didn't occur at trial was proof of the same victim itemized in the document. But the prosecution's theory did make clear that they weren't depending on that as part of the offense. So it would have been okay, then, if he would have ultimately proved that J.K., not J.F., was the one that got killed. That still would have been good. Yes, it would have been, because it certainly would have been enough under State law, which is the only place for the authority that this had to be in the information at all. In California, the chief notice regarding the charge comes from the preliminary hearing, not the written document. The written document just basically identifies what penal code section we're talking about, the where. But the actual, the other element, the aspects of the charge come from the preliminary hearing. So, and again, given the prosecutor's statements during the trial where he makes clear we are not basing this on a theory that we're proving beyond reasonable doubt intent to kill J.F., there can't be a claim that this was unknown at trial. And this is about notice. And given that there is no Supreme Court case saying that notice has to be an indictment or something that looks like an indictment, there's nowhere to begin here. Okay. So let's look at the information. You're talking about count one, right? The attempted murder, yes, I believe so. I need to find the... We are talking about the attempted murder charge. Do you have it on here? No. It's at 276 of the arrows. Volume 3. Thank you. I have it. So what are you relying on in information? I realize you think not everything needs to be in information, but let's start with that. Count one does specify J.F., right? It does. The information... Is there something else here that says, talks about anybody else in the group? There is no written document that identifies that, Your Honor. What we have is the prosecutor's notice during trial. But, no, it's not provided in writing. Okay. Where is that? In the prosecutor's argument. That's certainly a moving target, isn't it, what if the prosecutor during the trial changes his position a couple of times? I don't see that he changed his position a couple of times. Rather, he started off with the belief he could prove one victim, and he made perfectly clear to the defense that he was not going to try that by the end because the defense mocked it. In his own argument that the prosecutor is now conceding he can't prove a particular victim. So in terms of being aware, defense knew that that's what the prosecutor's theory was, and the question of whether that was in time or of a particular form, all of those would have been occasioned by an objection saying, I need more time because he's changed his theory, or, you know, I need a mistrial. But instead, defense counsel, knowing what the prosecutor's theory was by the end of trial, at a minimum, chose to do nothing but keep going. So he knew, and he took no action to say, I need something else in order to respond, which is he can't then come on appeal and say, hey, wait a minute, we actually didn't know. And where is this in the record, the prosecutor's statement? The prosecutor's argument, I have cited it in my brief and. Are you talking about his final argument? The opening and closing argument, yes. Not the opening statement. Because, again, my point isn't that. Just a minute. So I understand. Not his opening statement, but his opening final argument? Yes, Your Honor. That's a little late to change horses then, isn't it? Well, if your argument, if your point is that seems late in time, there's a normally understood remedy for things that are late in time. That is to request more time to respond. If, indeed, he was taken by surprise at the closing argument, then what you would have done, certainly I would have done if I'm a defense counsel, is say, wait a minute, Your Honor, we need more time to respond to this, or to preclude it, or, Your Honor, we need a mistrial. A final argument, and the trial judge then probably would have just said, oh, fine, we're at final argument, but we'll just recess this, and what? To suggest that a trial judge is unable to take whatever steps are necessary to fully cure any surprise I think is mistaken, Your Honor. If, indeed, there was prejudice shown that, no, we can't go forward with this, defense counsel truly is surprised, then the Court, of course, can even grant a mistrial. The Court surely could grant more time. If necessary, the Court could even preclude a theory of prosecution. But you were about to give me a citation where? I'm citing to AOB page 19, which quotes. I'm sorry, AOB? I'm sorry, my brief, the appellee's brief at page 19, which cites to. No, no, give me the record cites. Sub-ER at 6, 7, and 8, and 16, which the excerpts are quoted in the brief. Excerpts of record of what page? Submental excerpt of record at 6, then at 7. 6, and where on page 6? When the, starting at line 13, through. Okay, the one when the defendant. When the defendant got that gun and went to the carnival, he wasn't thinking Joel Flores, okay? He hadn't seen Joel Flores just as an individual. He was looking for a group.  I'm sorry. To find one of them. There's a group. I'm sorry. Where are you reading now? Line 20. And he went back with that gun to find one of them, okay? There's a group. So, again, he's not focusing on Joel. On SCR at page 7. Well, it says to find one of them. Yes, because the argument here is that somehow everyone was focused on Joel, and the prosecutor is making clear he's not. He's making clear that he's not saying the defendant intended Joel specifically, Joel or someone else. Well, I mean, in the prior paragraph, he refers to Joel, and then he says to one of them. Why wouldn't you gather that what he's saying is one of them, meaning Joel, the guy I mentioned in the prior paragraph? Well, even if that was plausible from this, there are the remaining quotes, Your Honor, which, again, are at page 19 of the brief citing the record. So I can continue to go through each of them if you'd like. Oh, absolutely. That's what I'm asking you to do, and you will do it. Sure thing, Your Honor. You're not going to sit down until you finish doing it. Sure. So let's not argue about it. Okay. So on page 7 of the record, Your Honor. Okay. And we're starting at line 2. When the defendant is shooting, okay, he's going to kill somebody within that zone. Joel Flores is one of them. There are others there as well. Okay. Then on the next page, starting at line. Sorry. SCR 8. Okay. There were the Netanyahus, and he was just trying to kill one of those individuals there. Joel Marcus was one of them. He shot the gun. He was trying to kill someone in that zone. Joel Flores was one of them there. And where is... And then we have at page 6, supplemental excerpts at page 16. Line 5. He didn't specifically go for Joel Flores. He was just one in that kill zone, and he intended to kill someone in there. Again, I think any defense attorney would have been aware that the prosecutor was not saying, my case depends in any way on proving that he intended to kill Joel Flores. Rather, someone in that group. Certainly, a state court of appeal would have been reasonable in reaching that conclusion, Your Honor. Okay. Thank you, Your Honor. We'll give you a minute for rebuttal. Thank you. The court of appeal, the state court of appeal here could no more grant a motion to amend for the first time on appeal than it could affirm a conviction on a ground that was raised for the first time on a basis on appeal. The kill zone instruction here, which my friend has relied on, the law is the instructions can cure prejudice if the finding was necessarily made by the jury under other properly given instructions. Here's the important thing. The California Supreme Court already said the kill zone instruction was defective. He had to find someone who was a member of a group under a kill zone, and under a kill zone you have to intend to kill everyone in order to kill someone. Where does that come from? That comes from Stone 2. Okay. But that is, in fact, a kill zone. You must kill everyone in order to kill someone. The California Supreme Court said the appellate court was right, this instruction is wrong, and even if it were correctly worded it doesn't apply anyway because one bullet does not kill everybody in a group. The prosecutor himself admitted that he couldn't prove specific intent to kill Joel F. Yet after the evidence came out at the preliminary examination, the prosecutor still maintained that pleading that said intent to kill Joel F. The jury was instructed on intent to kill Joel F. The jury verdict return said intent to kill Joel F. For the first time on appeal we know that you don't have to name a specific victim, but if you do and the defense relies on it, the defense has the right to rely on it in creating his defense. So we still maintain that Dunn controls. In Dunn the appellate court affirmed on a ground that was not what was alleged in the indictment, proved at trial, and contained in the verdict. It's the same thing here. The appellate court affirmed on an allegation that wasn't made in the pleading, on which he was not tried, on which the jury was not instructed, and the prosecutor's statements in summation do not suffice as a statement of the law. The jury was instructed that the court imparts the law. Thank you. The case is argued. We'll stand some minutes.
judges: Piersol, Kozinski, Tallman